**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**TANYA S.,**

**Plaintiff,**

**v.**

**Civil Action 2:26-cv-00056**
**Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## OPINION AND ORDER

Plaintiff, Tanya S., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

In 2021, Plaintiff filed an application for SSI, alleging disability beginning December 16, 2016, due to degenerative discs in lower back, arthritis in lower back, depression, anxiety, PTSD, bipolar, asthma, and neuropathy in her legs. (R. at 332–38, 377). After her application was denied initially and on reconsideration, the Administrative Law Judge Jason P. Tepley (the "ALJ") heard the case. (R. at 45–73). The ALJ denied benefits in a written decision. (R. at 123–52). The Appeals Council granted Plaintiff's request for review and remanded the case with instructions to "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83–14 and 96-9p)." (R. at 153–58). On remand, the claim was returned to ALJ Tepley. After another hearing, the ALJ issued an unfavorable decision on July 25, 2025. (R. at 14–44).

In his second opinion, the ALJ found that Plaintiff has not engaged in substantial gainful employment since October 13, 2021, the application date. (R. at 20). The ALJ further determined that Plaintiff has the following severe impairments: lumbar degenerative disc disease; obesity; neuropathy; migraine headaches; depression; anxiety; major neurocognitive disorder; bipolar disorder; PTSD; chronic pain syndrome; and obstructive sleep apnea. (*Id.*). The ALJ, however, found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ found that:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(a) except stand and/or walk 2 hours, unlimited ability to sit, in an 8-hour workday; Occasionally climb ramps/stairs, kneel, crouch, stoop, and balance (as defined in the SCO); Never crawl or climb ladders/ropes/scaffolds; Cannot tolerate excessive exposure to atmospheric conditions; No work in high, exposed places or in proximity to moving mechanical parts; no driving or operation machines/equipment; understand, remember, and carry out simple instructions; Occasional interaction with coworkers, supervisors; No interaction with the general public; can make simple work-related decisions; Can perform work without a specific production rate pace, such as an assembly line or hourly production quotas. Deal with occasional changes in routine work setting explained in advance.

(R. at 24–25).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 26).

Plaintiff has no past relevant work. (R. at 35). Relying on the vocational expert's testimony, the ALJ concluded that considering her age, education, work experience, and the above RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as a stuffer, inspector, or table worker. (R. at 35–36). He thus concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time since October 13, 2021.

(R. at 36). This became the final decision of the Commissioner when the Appeals Council denied review on November 18, 2025. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on January 16, 2026 (Doc. 1), and the Commissioner filed the administrative record on March 23, 2026 (Doc. 8). The matter has been briefed and is ripe for consideration. (Docs. 9, 10, 11).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff claims the ALJ erred when considering the opinions of Kelsey Chapman, Psy.D.; John Walter, DO; Erica Gantner, APRN; and Souhaila Rtoubi, APRN, PMHNP-BC. (Docs. 9,

11). The Commissioner counters that the ALJ reasonably attended to all four opinions. (Doc 10). The Court agrees Plaintiff's assignments of error are meritless.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). When determining the RFC, the ALJ must evaluate several factors, including medical evidence, medical opinions, and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). In doing so, the ALJ must resolve conflicts in the record. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)). And an ALJ is not required to adopt a medical opinion verbatim. *See, e.g.*, *Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."). Neither is an ALJ required to adopt an opinion in full merely because she finds it persuasive. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.").

**A. Kelsey Chapman, Psy.D.**

Plaintiff first challenges how the ALJ treated the opinion of consulting psychologist, Kelsey Chapman, Psy.D. (*See* Docs. 9, 11). Dr. Chapman examined Plaintiff on June 23, 2022.

(R. at 782–93). As the ALJ noted, Dr. Chapman assessed Plaintiff as having major neurocognitive disorder; bipolar II disorder; posttraumatic stress disorder; generalized anxiety disorder; and an other substance use disorder in sustained remission. (R. at 33 (citing R. at 789–90)). She noted Plaintiff's impairments in her ability to understand, remember and carry out instructions; to maintain attention, concentration, persistence and pace when performing simple and complex tasks; and to respond appropriately in a work setting. (*Id.* (citing R. at 792–793)). In crafting her opinion, Dr. Chapman considered Plaintiff's "mode of living," noting that she reported being able to dress, bath, and groom herself; cook and clean; go shopping, even with some anxiety; drive; and maintain relationships. (R. at 789; *see also* R. at 783 (also considering Plaintiff was attending college and passing her classes at the time, though she experienced some difficulties related to memory)).

The ALJ adjudged Dr. Chapman's opinion non-persuasive. (R. at 33). While he found she supported her opinion with rationale, he also concluded the severity of Dr. Chapman's assessment was inconsistent with the record. (*Id.*). As examples, the ALJ referred to evidence he previously discussed, including Plaintiff's testimony about her ability to "live independently, performing all daily activities; attend college; drive without difficulty; and shop in stores." (*Id.*; *see* R. at 25–26 (citing R. at 54–57); *see also* R. at 32 (elsewhere discussing Dr. Chapman's evaluation and again noting Plaintiff's daily activities)). He further referenced other evidence—including more recent records—showing that at appointments, Plaintiff was oriented, pleasant, cooperative, and coherent; and she had intact higher cognitive functioning, good insight, and natural mood with appropriate affect. (R. at 33 (citing R. at 1989–91, 2026–27, 2034, 2277, 2289, 2295)).

Plaintiff asserts the ALJ's evaluation of Dr. Chapman's opinion is inapt in two related ways. First, she argues that because Dr. Chapman considered Plaintiff's daily activities in opining

her limitations (R. at 783, 789), the ALJ could not rely on the same daily activities to discount Dr. Chapman's conclusions. (Doc. 9 at 5 (citing SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). Second, Plaintiff submits that the ALJ could not rely on her "intermittent performance of basic daily functions" to reject Dr. Chapman's opinion of what Plaintiff can and cannot do on a sustained basis. (*Id.* at 5–6). However, the Court need not address either argument because the ALJ explained his treatment of Dr. Chapman's opinion even beyond Plaintiff's daily activities.

Specifically, the ALJ did not find Dr. Chapman's opinion "non-persuasive" only because of Plaintiff's activities of daily living. As described above, the ALJ also cited to other record evidence showing the severity of Dr. Chapman's assessment was unsupported. (R. at 33 (citing R. at 1989–91, 2026–27, 2034, 2277, 2289, 2295)). Even if, as Plaintiff argues, the ALJ erred in his consideration of Plaintiff's daily activities, this uncontested passage confirms the ALJ's compliance with SSR 96-89 and constitutes substantial evidence for the ALJ finding Dr. Chapman's opinion "non-persuasive." *See* SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *cf. Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at *4 (6th Cir. Apr. 9, 2024) (finding no error where the ALJ considered a medical opinion against both a plaintiff's ability to live independently and other record evidence); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("Substantial evidence, this Court has said, is 'more than a mere scintilla.'" (citation omitted)). The Court can adequately trace the ALJ's logic, this assignment of error does not warrant remand.

**B. John Walter, DO**

Plaintiff next argues that the ALJ erred in a similar way when evaluating physician Dr. John Walter's opinion. (Doc. 9 at 7–9). Dr. Walter completed a medical impairment questionnaire for Plaintiff on July 20, 2023. (R. at 1817–18). He noted her low back pain/stiffness, some of her medical history, recent examinations findings, her lumbar diagnoses, and her treatment. (R. at 1817). He found, among other things, Plaintiff could stand for 30 minutes at one time and sit for 2 hours at one time. (*Id.*). Still, he opined she could work for 8 hours a day. (*Id.*). Dr. Walter also opined that Plaintiff would be off task for 5% or less of the workday due to her physical/psychological problems and that she would be absent from work twice per month based on her medical history, diagnoses, and prognosis. (R. at 1817–18).

The ALJ found Dr. Walter's opinion "mostly persuasive." (R. at 33). The ALJ noted that he supported his conclusions with some limited rationale. (*Id.*). And the majority of the opined limitations were consistent with the other record evidence. (*Id.*). Still, the ALJ observed that some of the record evidence was not consistent with Dr. Walter's opinion that Plaintiff would be absent from work for two days per month or that she should be limited to standing for 30 minutes at one time. (R. at 33–34). Specifically, he cited to Plaintiff's physical examinations that "frequently show little-to-no physical abnormality during the relevant period outside of lumbar tenderness." (R. at 33 (citing R. at 539, 622, 862, 931, 1114, 1174, 1240, 1402–03, 1466, 1471, 1502, 1598)). He also cited to Plaintiff's lumbar MRI, which showed "primarily mild and no more than moderate impairment without high-grade lumbar spinal canal or foraminal narrowing." (*Id.* (citing R. at 1815–16)). He noted an EMG/NCS which showed no acute lumbar radiculopathy or neuropathy. (*Id.* (citing R. at 1859, 1891, 1900–01)). The ALJ further highlighted Plaintiff's pain management records showing Plaintiff was oriented, pleasant, cooperative, and coherent. (*Id.* (citing R. at

1989–91, 2026–27, 2034, 2277, 2289, 2295)). Those same records revealed Plaintiff had intact higher cognitive functioning, good insight, and neutral mood with appropriate affect. (*Id.* (citing R. at 1989–91, 2026–27, 2034, 2277, 2289, 2295)). Rounding out his analysis, the ALJ found the two unconvincing limitations were not consistent with Plaintiff's "continued activities, including the ability to attend college." (R. at 34).

Like before, Plaintiff finds fault with the ALJ's mention of her continued activities and college attendance in discounting Dr. Walter's opinion that she would miss two days of work per month. (Doc. 9 at 7–9). But also like before, the ALJ explained his rejection of the limitation beyond his reference to Plaintiff's daily activities—it was inconsistent with record evidence. Specifically, the ALJ relied upon records showing Plaintiff suffered little to no physical abnormality during physical examinations; had no more than moderate impairment in her spine at an MRI; and was observed positively at pain management appointments. (R. at 33). These citations demonstrate the ALJ's compliance with SSR 96-89 and constitute substantial evidence for the ALJ's rejection of this limitation.

Plaintiff also submits that the ALJ needed to describe further how the medical findings referenced conflicted with the absence limitation. (Doc. 9 at 7–9 (citing *Wood v. Comm'r of Soc. Sec.*, No. 3:18-CV-76, 2019 WL 1614591, at *3 (S.D. Ohio Apr. 16, 2019) ("[T]he ALJ must meaningfully explain why certain limitations are not included in the RFC determination, especially when, as here, such limitations are set forth in an opinion the ALJ weighs favorably."), *report and recommendation adopted*, No. 3:18-CV-76, 2019 WL 1958663 (S.D. Ohio May 2, 2019)). But the Court can adequately trace the ALJ's logic from the records showing Plaintiff's normal examination results and mild symptoms to his conclusion that she would not be absent twice per

month based on her medical history, diagnoses, and prognosis as Dr. Walter found. No more explanation is necessary to under the law. Consequently, remand is not appropriate here either.

**C. Erica Gantner, APRN**

Plaintiff next claims the ALJ insufficiently explained his rejection of Nurse Erica Gantner's opinion.[1] (Doc. 9 at 9–13). Specifically, says Plaintiff, the ALJ did not adequately address the opinion's supportability or consistency. (*Id.*).

The regulations provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Indeed, the regulations require an ALJ to "explain how he considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allow that the ALJ "may, but [is] not required to, explain how [she] considered" the other factors. *Id.*

When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the

[1] The ALJ erroneously refers to Nurse Gantner as Nurse Gardner in his decision. (*See* R. at 34). Plaintiff erroneously refers to Nurse Gantner as Nurse Gardner or Nurse Gartner in her Statement of Errors and reply. (Docs. 9, 11). (*See also* R. at 1970).

medical opinion. 20 C.F.R. § 404.1520c(c)(2). Still, the ALJ does not need to use "any specific phrasing to comply with the applicable regulations." *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (noting that "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim" (internal quotation omitted)).

Applied here, in August 2023, Nurse Gantner completed a mental impairment questionnaire for Plaintiff. (R. at 1821–23). She noted Plaintiff's DSM-V diagnoses and symptoms. (R. at 1821 (checking off that Plaintiff experienced poor memory, mood disturbances, emotional lability, recurrent panic attacks, generalized persistent anxiety, and difficulty thinking or concentrating but not providing further remarks)). She also stated she began treating Plaintiff in November 2022. (*Id.*). On a check-box-style form, she indicated Plaintiff was markedly impaired in her ability to ignore or avoid distractions while working; and work close to or with others without interrupting or distracting them. (R. at 1822 (further indicating Plaintiff was moderately impaired in several other abilities)). Also answering check-style questions, Nurse Gantner said Plaintiff would be off task more than 20% of the time in a work week; absent from work twice a month; and unable to perform regular, full-time, competitive work without missing work, being off task, or needing additional breaks. (R. at 1822–23).

The ALJ found Nurse Gantner's opinion not persuasive. (R. at 34). He reasoned that the opinion was on a "check-the-box" form that contained no significant supporting rationale. He further found that her opinion was not consistent with the overall evidence of the record, including Plaintiff's ability to attend college, live alone, and drive, as well as mental status examination findings which showed little abnormality outside of the "full-scale intelligent quotient score." (*Id.* (citing R. at 782–93)).

Beginning with supportability, Plaintiff claims the ALJ's analysis is not enough. She says the ALJ ignored the fact that Nurse Gantner provided diagnostic codes, Plaintiff's treatment dates, and her symptoms at the beginning of the form. (Doc. 9 at 11; *see also* Doc. 11 at 5). Despite this, as the ALJ observed, Nurse Gantner's opinion still did not contain significant supporting rationale for her recommendations that Plaintiff would be off task for 20% or more of the workday or that she would be absent from work twice per month. (R. at 34). She merely checked off options on the form. "Courts in the district routinely find that in the absence of explanatory support or reference to objective findings, such conclusory forms lack supportability." *Renee M. v. Comm'r of Soc. Sec.*, No. 3:23-cv-34, 2024 WL 1343582, at *3 (S.D. Ohio Mar. 29, 2024) (citing *Zachariah G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-1600, 2022 WL 883769, at *9 (S.D. Ohio March 25, 2022) ("[B]ecause the statement was in the form of a checklist, without any additional comments or annotation, it lacked any supporting explanations or citations to relevant medical evidence, which are central to the supportability factor."), *report and recommendation adopted*, 2022 WL 2339444 (S.D. Ohio June 29, 2022)); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 1:25-CV-141, 2026 WL 636817, at *10 (S.D. Ohio Mar. 6, 2026) (finding an ALJ met the minimum standard of articulation for supportability when he found an opinion unsupported because it was a checkbox and fill-in-the-blank form "without much explanation or rationale"); *Laney v. Comm'r of Soc. Sec.*, No. 5:21-cv-01290, 2022 WL 2176539, at *6 (N.D. Ohio June 16, 2022) ("Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion."); *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) (noting an ALJ may "properly discount[] a treating source's questionnaire because the source 'failed to provide any explanation for his responses.'" (citation omitted)); *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *8 (6th Cir. June 12, 2024) ("The ALJ's determination

that a medical opinion with less than a sentence of explanation for its conclusions had little supportability and therefore limited persuasiveness was reasonable.").

Plaintiff alternatively asserts the ALJ erred because he did not mention in his supportability analysis Nurse Gantner's treatment records. (Doc. 9 at 11). But it is unclear what Plaintiff specifically speaks about here. Plaintiff did not cite to any of Nurse Gantner's treatment records as part of her supportability argument. (*See id.* at 9–13; *see also* Doc. 11 at 5). Neither did Nurse Gantner in her opinion. (R. at 1821–23); *see Renee M.*, 2024 WL 1343582, at *3. All told, the Court finds the ALJ met the minimum standard of articulation required to explain why Nurse Gantner's opinion was not supported. *See, e.g.*, *Kimberly S.*, 2026 WL 636817, at *10.

Turning now to consistency, Plaintiff similarly contends the ALJ's analysis is deficient. She again faults the ALJ for relying on Plaintiff's daily activities and says the ALJ's citation to other record evidence was no more than lip service to the factor because he merely gestured to the overall record. (Doc. 9 at 11–12; *see also* Doc. 11 at 5–6). To the extent Plaintiff contests the ALJ's reference to Plaintiff's abilities to attend college, live alone, and drive in finding Nurse Gantner's inconsistent with the record, the Sixth Circuit has found a plaintiff's "ability to live independently is a valid consideration when evaluating opinion evidence" because "[t]he regulation provides that the evaluation of the consistency factor involves comparing the opinion to medical and nonmedical sources, including the [plaintiff] herself." *Hopkins*, 2024 WL 3688302, at *4 (citing 20 C.F.R. § 416.920c(c)(2) and 20 C.F.R. § 416.913(a)(4)).

Additionally, the ALJ bolstered his consistency analysis—albeit briefly—with citations to the record. Specifically, he highlighted that Nurse Gantner's opinion was inconsistent with the level of impairment found in records like Plaintiff's consultative examination. (R. at 34). He pointed out that record showed little abnormality. (*Id.* (citing R. at 781–93)). And only one page

earlier, he discussed that record in detail. (R. at 33; *see also* R. at 32 (further discussing Plaintiff's mental status examinations and the psychological consultative examination)). Rather than being required to comb through all the medical evidence to find the justification for the ALJ's consistency conclusion as Plaintiff suggests (Doc. 9 at 12), the Court knows exactly where to look. *Cf. Dunlavy v. Comm'r of Soc. Sec.*, No. 24-3333, 2024 WL 4558606, at *3 (6th Cir. Oct. 23, 2024) ("But we need not go on a 'scavenger hunt' to find support for the ALJ's findings here. The ALJ evaluated the psychologists' opinion in the same section of her decision in which she discussed the inconsistencies in the record. That is enough to 'connect the dots.'")). The ALJ's opinion must be read as a whole. *See, e.g.*, *William G. v. Comm'r of Soc. Sec.*, No. 2:22-CV-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022) ("When evaluating consistency, the Undersigned looks to the ALJ's immediate discussion regarding [a medical source's] opinion, and also to his discussion of the record elsewhere in the opinion. This is because the ALJ's opinion ought to be read as a whole." (collecting cases)), *report and recommendation adopted*, No. 2:22-CV-213, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022).

Plaintiff further submits the ALJ mischaracterized the consultative examination he compared Nurse Gantner's opinion to. (Doc. 9 at 12 n.4). And she cites to other evidence the ALJ considered which she says supports her view that Nurse Gantner's opinion is consistent with the record. (Doc. 11 at 6–7). These arguments are invitations to reweigh the evidence. But this Court may not do so. "[I]t is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion." *Whetsel v. Comm'r of Soc. Sec.*, No. 2:15-cv-3015, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017). And "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Napier v.*

*Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) (rejecting an argument that the ALJ mischaracterized findings and noting "as long as the ALJ's findings were, as here, supported by substantial evidence, we may not second-guess them, even if substantial evidence would support the opposite conclusion."). Because the Court finds the ALJ met the minimum standard of articulation for consistency, Plaintiff's assignment of error is meritless.

**D. Souhaila Rtoubi, APRN, PMHNP-BC**

Finally, Plaintiff claims the ALJ's consistency analysis of Nurse Souhaila Rtoubi's opinion also falls short. (Doc. 9 at 12–13; Doc. 11 at 7). Nurse Rtoubi prepared an undated narrative opinion on behalf of Plaintiff in which she noted that Plaintiff was under her psychiatric care. (R. at 1972). She indicated Plaintiff was diagnosed with bipolar disorder and attention-deficit/hyperactivity disorder. (*Id.*). She said both "significantly impact her ability to maintain consistent occupational functioning." (*Id.*). Nurse Rtoubi elaborated that Plaintiff experiences fluctuations in mood, difficulties with emotional regulation, attention, and executive functioning, which impair her ability to meet the demands of a structured work assignment. (*Id.*). Ms. Rtoubi continued that despite adherence to treatment, Plaintiff continued to struggle with episodes of mood instability, cognitive challenges, and periods of overwhelming symptoms that hinder her ability to complete tasks effectively. (*Id.*). Ms. Rtoubi concluded that Plaintiff was unable to fulfill the requirements of her work assignment due to her mental health condition. (*Id.*).

The ALJ found Nurse Rtoubi's letter "non-persuasive." (R. at 34). While he found she supported her opinion with rationale, he also concluded "the severity of the assessment is not entirely consistent with the evidence of record." (*Id.*). The ALJ once again cites to Plaintiff's daily activities and her ability to live independently. (*Id.*). He also references Plaintiff's records failing to document emergency care or impatient hospitalizations for mental impairments and

records the ALJ discussed before which failed to show debilitating limitations. (*Id.*). Finally, the ALJ found Nurse Rtoubi's letter inconsistent with Plaintiff's history of conservative care for her mental impairments. (*Id.*).

Plaintiff takes issue with the ALJ discussing the absence of impatient hospitalizations in the record and her history of conservative care in rejecting Nurse Rtoubi's opinion. (Doc. 9 at 12–13). She claims the ALJ did not explain the connection between Nurse Rtoubi's opinion and the absence of any hospitalization. (*Id.*). She also contests the ALJ classifying her mental health treatment as conservative since she required "biweekly specialized care for her mental health." (*Id.* (arguing "conservative care" means "not serious care")). Again, the Court can follow the ALJ's logic.

First, the ALJ reasonably considered Plaintiff's ability to live independently as being inconsistent with the severity of Nurse Rtoubi's opinion. (R. at 34); *see Hopkins*, 2024 WL 3688302, at *4. Then the ALJ properly considered Plaintiff's conservative mental health treatment as conflicting with the severity of Nurse Rtoubi's opined functional limitations. Courts have found consideration of conservative treatment in a consistency analysis appropriate under the regulations. *See, e.g.*, *Burley v. Comm'r of Soc. Sec.*, No. 4:23-CV-00218-BMB, 2023 WL 9604195, at *11 (N.D. Ohio Dec. 20, 2023) (quoting 20 C.F.R. §§ 404.1520c(3)(c)(5), 416.920c(3)(c)(5)), *report and recommendation adopted*, No. 4:23-CV-00218, 2024 WL 1297554 (N.D. Ohio Mar. 27, 2024); *Brian B. v. Comm'r of Soc. Sec.*, No. 3:25-CV-187, 2026 WL 706584, at *15 (S.D. Ohio Mar. 13, 2026) ("In comparing the opinion to Plaintiff's conservative treatment . . . the ALJ evaluated Dr. Tran's opinion for consistency."); *Alicia B. v. Comm'r of Soc. Sec.*, No. CV 25-10627, 2026 WL 575332, at *5 (E.D. Mich. Mar. 2, 2026) ("ALJs are allowed to consider the nature of a plaintiff's treatment as part of the consistency evaluation." (citing *Hopkins*, 2024 WL

3688302, at *4 and *Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *3 (6th Cir. Sept. 28, 2023))).

As for Plaintiff's contention that ALJ improperly classified her treatment as conservative, the Court declines to disturb this conclusion in light of the ALJ's extensive review of Plaintiff's mental health treatment consisting of therapy and medication. (R. at 27, 29–31; *see also* R. at 26 (noting Plaintiff's mental health treatment consisted of medication administration and monitoring)); *cf. Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 669 (6th Cir. 2009) (finding supported an ALJ's conclusion that a plaintiff received conservative mental health treatment when the treatment consisted only of psychotropics, therapy, and one hospitalization). The Court finds the ALJ's analysis that these considerations were inconsistent with the severity of Nurse Rtoubi's assessment properly supported. Though Plaintiff obviously wishes the ALJ came to a different conclusion, her assigned error here is no more than a request for the Court to reweigh the evidence. For the same reasons as before, the Court will not do so. Consequently, Plaintiff's final error is not well taken.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 9) be **OVERRULED,** and the Court **AFFIRM** the Commissioner's decision.

IT IS SO ORDERED.

Date: August 6, 2026

s/ *Kimberly A. Jolson*
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE